Marian **FULKERSON**, sometimes known as **Marian Baker**, by Lynn Baker, her next friend, and Frank C. Seavey, **Plaintiffs,**

v.

**IOWA HOME MUTUAL CASUALTY COMPANY, a corporation, Defendant.**

**Civ. No. 4010.**

United States District Court
D. Wyoming.

April 30, 1957.

**664**

Robert S. Lowe, Rawlins, Wyo., for plaintiffs.

A. Joseph Williams, Cheyenne, Wyo., for defendant.

KERR, Judge.

This case has been submitted to the Court for decision upon the pleadings, exhibits received at two pretrial conferences, written briefs, argument of counsel and motions for summary judgment filed on behalf of each of the parties, all of which have been carefully considered.

The Insurance Company seeks to avoid its liability under the insurance policy on the ground that the insured failed to cooperate with the insurer in the defense of the action in the State Court in violation of the terms of the policy. The policy provides, among other things, as follows:

> "The insured shall cooperate with the company and, upon the company's request, shall attend hearings and trials and shall assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits."

The specific act of non-cooperation relied upon by the Insurance Company is the failure of Alfred L. Pol (son of insured, Francine Pol) to attend the trial of the State Court on January 23, 1956. It is appropriate to relate the circumstances that led up to the alleged failure of Alfred L. Pol to attend the trial.

On September 28, 1953, Francine Pol, the insured and owner of the vehicle, permitted her son, Alfred L. Pol, age fifteen years, to drive her 1946 Oldsmobile. At a point between Rawlins and Sinclair, Wyoming, he was involved in what might be termed a rather serious automobile accident, in which his guest Marian Fulkerson, sometimes known as Marian Baker, a girl of tender years, was injured.

Following the accident and on October 6, 1953, Alfred L. Pol was interviewed by an agent of the Insurance Company, at which time he gave a five-page statement setting forth all of the facts and circumstances surrounding the collision. Except as to the rate of speed he was traveling it is not now contended that the statement was not accurate and gave a truthful account of what occurred.

Subsequent to the accident an action was filed in the State District Court of Carbon County, Wyoming, in which Marian Fulkerson, sometimes known as Marian Baker, Pol's guest, and Frank C. Seavey, owner of the truck involved in the accident, joined as plaintiffs in said action against Alfred L. Pol. The case was tried to a jury on January 23, 1956, after having been continued two or three times. The jury returned a verdict in favor of plaintiff Marian Fulkerson, some-

times known as Marian Baker, in the sum of $5,692.91 and in favor of plaintiff Frank C. Seavey in the sum of $419.28. The Insurance Company defended the action from its inception to its final conclusion. After judgment was entered the Insurance Company refused to pay the same and contended that Alfred L. Pol refused to cooperate during the trial and this action followed.

The Insurance Company places great reliance upon certain correspondence in support of its defense. I will review this correspondence in chronological order. On March 24, 1954, Mrs. Pol, the insured, advised the Insurance Company through her attorney, as follows:

"* * * Referring to the postscript in your letter, Mrs. Durney (Mrs. Pol) will take up the matter with her son, Alfred, about returning to Rawlings as a witness in the trial, however, she feels that this expense can be obviated by the taking of his deposition. It is Mrs. Durney's wish and desire to be as helpful as possible, and you may rest assured that she will give you every cooperation in the pending litigation."

On April 1, 1954, the Insurance Company replied to the above letter, as follows:

"In conjunction with your letter of March 24, 1954, it would be greatly appreciated if in your representation of Mrs. Pol you would impress upon her the fact that she and her son are defendants in this case, and we deem it imperative that she be present, or her son be present, for the trial of this matter. This Company is in no way connected with the defense of this other than as mere representatives of the defendants through its attorneys. Consequently, bearing these thoughts in mind, I would appreciate it very much if you would contact your client and advise me immediately as to the intent of Alfred Pol being in Rawlins, Wyoming for trial of this matter."

On April 15, 1954, the insured, through her attorney, again wrote the Insurance Company:

"Mrs. Pol assures me that if you will give her ample notice of the date of the trial, she will arrange to have her son, Alfred Pol, there. Mrs. Pol desires to cooperate with your company in making a proper defense to the action. She assured me and so did her son that they did not believe that after the facts were disclosed that there would be any liability arising out of the accident upon her son or your company.

"Kindly keep me advised of the progress of this action and inform me well in advance as to when the case is set for trial, as you will appreciate the fact that Evansville is a considerable distance from Cheyenne and that the transportation charges are rather heavy."

On August 17, 1955, the Insurance Company advised the insured by registered mail, as follows:

"Prior to your leaving Rawlins, Wyoming, suit was filed against you and your son; service was effectively completed on your son. Since the suit which was filed is drawing near, it is imperative that your son be present for such trial.

"We wish to point out the contract which we have with you calls for complete cooperation, and without immediate contact by you or your son, we must advise we will not be in a position to carry on any further with the defense of this law suit due to lack of cooperation on your part.

"*Contact us immediately by wire or phone collect.*"

On September 23, 1955, the Insurance Company advised Alfred L. Pol by letter, as follows:

"Will you please write this office immediately and advise us whether you will be available for trial on the suit which has been filed as a result of the accident of September 28,

1953, in which the vehicle you were operating was involved with the vehicle of Frank Seavey. Trial on this matter will probably be held during the month of October or November."

The above letter was answered by Captain Harry D. Pitchford, Jr., of the Judge Advocate Department, Fort Hood, Texas, under date of October 5, 1955, as follows:

"Private Alfred Pol is slated to go on maneuvers from the 25th October to on or about 15 December 1955. Will you please see if you can get this case continued. However, if you can not I will attempt to obtain an emergency leave for Pol if you will advise me of the time that you want Pol present to testify.

"I can not at this time, however, guarantee you that Private Pol can be present until after the completion of the above referred to maneuvers."

On November 21, 1955, the Insurance Company again advised Alfred L. Pol by registered letter:

"Will you please advise this office whether or not you will be available for trial of the above matter in Wyoming on or about the 15th day of December, 1955.

"It is imperative that you advise us immediately so that we may proceed accordingly."

On November 22, 1955, Captain Pitchford again advised the Insurance Company:

"I am in receipt of your letter of 25 October 1955, and beg to advise that Private Pol is now participating in Exercise Sage Brush; however, he is due to return to Fort Hood between 5 and 10 December, this year, and every effort will be made at that time to get him leave so that he can proceed immediately to Cheyenne."

Later Alfred L. Pol, in an undated letter, advised the attorney for the Insurance Company, as follows:

"I am sorry to say that P.F.C. Alfred L. Pol is unabel to attend court on this date 15th of Dec.

'Reasion'. That I P.F.C. Alfred L. Pol will be in the process of going over sea's on the first of Dec. Thank you."

On December 15, 1955, Captain Pitchford advised the Insurance Company:

"I contacted Pol yesterday and he advised me that he will not return to Cheyenne. Of course you realize that there is nothing more that I can do in this regard as I cannot force him to attend the trial."

On January 3, 1956, the Insurance Company advised Pol by registered mail, as follows:

"We wish to advise you that trial in the matter of Marian Baker vs. Alfred L. Pol has been postponed to January 16, 1956.

"It is imperative that you advise us immediately whether or not you are going to make any effort whatsoever to appear in this matter."

On January 19, 1956, the attorney for the plaintiffs advised the attorney for the Insurance Company:

" * * * I imagine that you will now want to take the necessary steps and proceedings for the preservation and protection of your client's interests by taking his deposition at the military base at which he is stationed in light of his obstinacy and refusal to attend the trial of this case here at Rawlins, notwithstanding the arrangements reportedly made by his superiors to permit his attendance here. As you will recall, this was the procedure that we recommended to you in our telephonic conference had on Friday, January 6, A. D. 1956, between yourself and myself.

"Assuming that you intend to follow this procedure, we would greatly appreciate your advising us as soon as possible when you expect to take such a deposition and where you intend to take it, so we can make our arrangements to be present. The time is drawing short before the trial shall commence on Monday,

January 23, 1956, and we would urge your early attention to this matter."

If the insured failed to cooperate such failure must be found in the context of the above letters as the Court has no other evidence before him.

■■■ To constitute a breach of a cooperation clause by the insured there must be a lack of cooperation in a substantial and material respect, a technical or inconsequential lack of cooperation is immaterial. It is generally held that an unreasonable refusal or failure of the insured to testify at the trial when he is a material or important witness is a breach of the clause of a liability insurance policy requiring cooperation. To establish a breach of the clause based upon the fact that the insured failed to appear at the trial, the insurer must show more than mere absence, since absence, if excusable or justifiable, does not in itself constitute lack of cooperation. See State Farm Mutual Automobile Insurance Company v. Koval, 10 Cir., 146 F.2d 118; State Farm Mutual Automobile Insurance Company v. Palmer, 9 Cir., 237 F.2d 887; 29 Am.Jur., Insurance, §§ 795, 602.

I cannot escape the clear import of the record that the accident occurred September 28, 1953, and the trial took place January 23, 1956, yet during this long intervening time the Insurance Company had ample time to take the deposition of Alfred L. Pol had they so desired but they did not do so, although the correspondence discloses that they were twice requested to take his deposition. Counsel for the insurer urged at the pretrial conference that Pol's whereabouts were unknown for a long period of time but the record shows they were in contact with him or his superior officers at least four months prior to the trial.

Here the insurer rests its affirmative defense on the conduct of a seventeen year old boy at a time when he was serving in the army, engaged in Sage Brush maneuvers at least one thousand miles from the place of trial, preparing to go overseas at the very time they were urging his attendance. At no time did the insurer suggest paying his expenses, or even a portion of the same, in making a journey of two thousand miles to attend the hearing. The case of Oberhansly v. Travelers Insurance Company, 5 Utah 2d 15, 295 P.2d 1093, is somewhat analogous to the instant case since the insured there likewise failed to attend the trial because he thought to do so would jeopardize his chances for promotion. It was therein stated in 295 P.2d at page 1096:

"Here the insured because of financial difficulties had to seek employment outside the state. While he was in Utah he fully cooperated with the insurance company, reported the accident when he was sued and gave it a written statement of facts at its request. Long before the trial the insured was informed of his new address and that insured felt his new position and chances for promotion would be jeopardized if he left to attend the trial and therefore he was not planning on coming back to Utah for that purpose. *The insurance company had ample time to take his deposition had they so desired, but they did not do so.* Under such circumstances it cannot be said that the insured's absence from the trial was unreasonable and unjustifiable and that the trial court erred in finding that he had not failed to cooperate with the insurance company nor did he fail to comply with the terms of the insurance policy. It should be pointed out that even if his failure to attend the trial could be considered a violation of the cooperation clause, yet, unless the insurance company was substantially prejudiced by such absence, it is not a valid defense against the injured third party. See Wormington v. Associated Indemnity Corp., 13 Cal.App.2d 321, 56 P.2d 1254, where the court upheld the trial court's finding that the assured cooperated with the insurance company where he reported the accident

and gave his deposition and the insurance company had an opportunity to cross-examine, and said that even if there had been a lack of cooperation it would not have been prejudicial under such facts. In the instant case, although no deposition was taken, the insurance company had plenty of opportunity to take one if it had wanted to. It did take a written statement, but did not see fit to take a deposition. An insurance company must use due diligence in performing its part of the contract. See Jensen v. Eureka Casualty Co., 10 Cal.App.2d 706, 52 P.2d 540."

The cases dealing with the clause of the policy now under consideration emphasize the fact that cooperation implies not an abstract conformity to ideal conduct, but a pragmatic question to be determined in each case in the light of the particular facts and circumstances. See Standard Accident Insurance Co. of Detroit v. Winget, 9 Cir., 197 F.2d 97, and the many cases cited.

Finally, it is urged by insurer that Pol's absence resulted in prejudice to the insurer for the reason that the last witness called by plaintiffs was asked by plaintiffs' counsel if Pol had been drinking, to which the answer was: "I never knew him when he wasn't". At the pretrial conference counsel admitted the Court instructed the jury to disregard the question and answer and that plaintiffs' counsel in his closing argument to the jury again reminded them they should pay no attention to this testimony. Under these circumstances it would have been improper to place Pol on the stand to interrogate him on this subject as the matter was not an issue in the case. It is also argued that the same witness testified that Pol said of Marian Fulkerson: "I do not give a damn about her. That is not my girl". What Pol thought of Marian Fulkerson was not material to the issues of the case. The same witness testified that Pol stated after the accident: "I was going between 80 and 100 miles an hour". Whether Pol would have admitted or denied this statement the Court can neither speculate nor surmise.

I hold that the insurer has failed to make any showing as to the testimony which Pol would have given had he been present. In the Koval case, supra, Judge Phillips said in 146 F.2d at page 120:

"There was no showing that if he had been present he could have given any material testimony on the issues with respect to the injuries and damage."

■ The great weight of authority places squarely upon the insurer the burden of proving the alleged non-cooperation of the assured. Pennsylvania Threshermen & F. M. Cas. Ins. Co. v. Owens, 4 Cir., 238 F.2d 549; Williams v. Employers Mut. Liability Ins. Co. of Wisconsin, 5 Cir., 131 F.2d 601; General Casualty & Surety Co. v. Kierstead, 8 Cir., 67 F.2d 523; Employers Ins. Co. of Ala. v. Brock, 233 Ala. 551, 172 So. 671; United States Fidelity & Guaranty Co. v. Brandon, 186 Ark. 311, 53 S.W.2d 422; United States Fidelity & Guaranty Co. v. Snite, 106 Fla. 702, 143 So. 615; Albert v. Public Service Mut. Cas. Ins. Corp., 266 App.Div. 284, 42 N.Y.S.2d 124; Cameron v. Berger, 132 Pa.Super. 484, 1 A.2d 529.

■ Whether Pol's action and conduct constituted a failure to cooperate is a question of fact. A review of the entire record and authorities persuades me to the belief that the insurer has failed to sustain the burden of proof required to show the insured failed to cooperate.

For reasons above stated the motion for summary judgment filed on behalf of the plaintiffs is sustained. Counsel for plaintiffs will prepare judgment in accordance with the prayer of the complaint, allowing interest from February 20, 1956, the date of the entry of judgment in the State Court, and submit same within fifteen days from the filing of this memorandum, allowing defendant a proper exception thereto, and the clerk will enter an order accordingly.